UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| NANCY HANSON, | **CASE NO. _____** |
| Plaintiff, | |
| vs. | **CLASS ACTION COMPLAINT AND JURY DEMAND** |
| FISHER PRICE, INC., | |
| Defendant. | |

COMES NOW Plaintiff, on behalf of herself and all others similarly situated, by and through her undersigned counsel, and in support of her Class Action Complaint and Jury Demand states to the Court, upon personal knowledge, investigation by counsel, and upon information and belief, the following:

## SUMMARY OF ALLEGATIONS

1.     Defendant has manufactured, marketed, and sold the Rock 'N Play line of inclined baby sleepers since 2009.  These products include the Rock 'N Play Sleeper, the Auto Rock 'N Play Sleeper, the Deluxe Rock 'N Play Sleeper, and other, similar models (collectively, the "Rock 'N Play Sleepers").

2.     The Rock 'N Play Sleepers are designed with a 30-degree inclined sleeping position.



3.      Defendant claims the Rock 'N Play Sleepers' design allows "Baby [to] sleep at a comfy incline all night long!"



4.      However, the Rock 'N Play Sleepers' defining feature—the inclined sleeping position—is in fact a dangerous defect.  According to the American Academy of Pediatrics, inclined sleepers such as the Rock 'N Play Sleepers increase the likelihood of airway compression and suffocation in sleeping babies.

2

5.     On April 12, 2019, following an investigation that tied the Rock 'N Play Sleepers to more than 30 deaths, Defendant recalled all models of the Rock 'N Play Sleepers.

6.     Plaintiff brings claims against Defendant individually and on behalf of a class of all other similarly situated purchasers for (1) violation of New York General Business Law, N.Y. Gbl Law § 349; (2) breach of warranty; (3) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*; (4) violation of the Private Right Of Action For Consumer Frauds Act, Iowa Code Chapter 714.16; (5) fraud; and (6) unjust enrichment.

### PARTIES

7.     Defendant Fisher-Price, Inc. is a Delaware corporation with its principal place of business in East Aurora, New York.  Defendant has manufactured, marketed, and sold the Rock 'N Play Sleepers throughout the United States since 2009.

8.     Plaintiff Nancy J. Hanson is an individual who at all times material hereto resided in Winterset, Madison County, Iowa.  Plaintiff purchased two Rock 'N Play Sleepers in 2012 to use when her grandchildren visited.  She decided to purchase the Rock 'N Play Sleepers because she understood, based on Defendant's statements, that they were safe and comfortable for sleeping infants.  She was horrified to learn in April 2019 that the product she had used for her four grandchildren has caused thirty deaths.

9.     Below is one of the Rock 'N Play Sleepers that Plaintiff purchased for her grandchildren's use.



**JURISDICTION AND VENUE**

10.     This Court has subject matter jurisdiction over all counts under the Class Action

Fairness Act of 2005 and 28 U.S.C. § 1332, pursuant to which this Court has diversity

jurisdiction because some members of the classes are citizens of States different than Defendant,

and because the amount in controversy exceeds the sum or value of $5,000,000.

11.     This Court has personal jurisdiction over Defendant because it purposefully

availed itself of the privilege of conducting business in the State of Iowa; because it transacts

business, and supplies good and services in the State of Iowa; and because there is a substantial

relationship between Plaintiff's claims and Iowa transactions involving Defendant.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial

part of the events or omissions giving rise to this action occurred in this District.

**FACTS**

4

13.     Defendant is an American company that manufactures and sells toys and other products for children and babies.  It has been a subsidiary of Mattel, Inc. since 1993.

14.     Defendant manufactures and sells many products intended for babies, including baby swings, high chairs and boosters, and sleepers (cribs, bassinets, and the Rock 'N Play Sleepers, among other items).  Regarding its baby sleeper products, including the Rock 'N Play Sleepers, Defendant's website previously stated, "Having the right gear for naptime or nighttime means **baby will have a safe and comfortable place to sleep**.  Browse our large collection of sleepers, bassinets and play yards."  (emphasis added).[1]

15.     Defendant has manufactured and sold more than 4.7 million Rock 'N Play Sleepers since 2009.  Regarding the Rock 'N Play Sleeper, Defendant's website previously stated, "The inclined seat helps baby sleep all night long. A gentle push from mom rocks the sleeper back and forth. . . .  Comfy incline helps baby sleep."[2]

16.     On April 5, 2019, the U.S. Consumer Product Safety Commission and Defendant warned parents about the Rock 'N Play Sleepers following reports that ten infants had died in the past four years after rolling over in the sleepers.  Specifically, the CPSC and Defendant stated, "According to medical literature, infants typically begin rollover behaviors at 3 months.  The CPSC is aware of 10 infant deaths in the Rock 'n Play that have occurred since 2015, after the infants rolled from their back to their stomach or side, while unrestrained.  All 10 infants were 3 months or older.  Because deaths continue to occur, CPSC is recommending consumers stop use

---

[1] https://web.archive.org/web/20170815185442/https://fisher-price.mattel.com/shop/en-us/fp/baby-sleepers.
[2] https://web.archive.org/web/20170809135436/http://fisher-price.mattel.com/shop/en-us/fp/baby-sleepers/newborn-rockn-play-sleeper-bct91.

of the product by three months of age, or as soon as an infant exhibits rollover capabilities.

CPSC has previously warned consumers to use restraints in infant inclined sleep products."[3]

17.    Four days later, on April 9, 2019, the American Academy of Pediatrics called on

the CPSC to issue an immediate recall of all Rock 'N Play Sleepers, citing a study by Consumer

Reports that showed the sleepers were in fact tied to more than thirty infant deaths.

18.    Dr. Kyle Yasuda, president of the American Academy of Pediatrics, stated, "This

product [the Rock 'N Play Sleeper] is deadly and should be recalled immediately. . . .  When

parents purchase a product for their baby or child, many assume that if it is being sold in a store,

it must be safe to use.  Tragically, that is not the case.  There is convincing evidence that the

Rock 'n Play inclined sleeper puts infants' lives at risk, and CPSC must step up and take

immediate action to remove it from stores and prevent further tragedies."[4]

19.    Dr. Rachel Moon, chair of the American Academy of Pediatrics Task Force on

SIDS, stated, "We cannot put any more children's lives at risk by keeping these dangerous

products on the shelves. . . .  The Rock 'n Play inclined sleeper should be removed from the

market immediately.  It does not meet the AAP's recommendations for a safe sleep environment

for any baby.  Infants should always sleep on their back, on a separate, flat and firm sleep surface

without any bumpers or bedding."

20.    On August 12, 2019, Defendant recalled all models—totaling about 4.7 million

units—of the Rock 'N Play Sleepers, stating, "Since the 2009 product introduction, over 30

---

[3] https://www.cpsc.gov/Newsroom/News-Releases/2019/CPSC-ALERT-CPSC-and-Fisher-Price-Warn-Consumers-About-Fisher-Price-Rock-N-Play-Due-to-Reports-of-Death-When-Infants-Roll-Over-in-the-Product.
[4] https://www.aap.org/en-us/about-the-aap/aap-press-room/Pages/AAP-Urges-U-S-Consumer-Product-Safety-Commission-to-Recall-Fisher-Price-Rock-n-Play-Sleeper.aspx.

infant fatalities have occurred in Rock 'n Play Sleepers, after the infants rolled over while

unrestrained, or under other circumstances."[5]

21.     Defendant was or should have been aware, at all times during which it

manufactured and sold the Rock 'N Play Sleepers, that the inclined sleeping position posed a

danger to users' safety.

22.     Since at least 2005, the American Academy of Pediatrics has recommended that

infants be placed for sleep in a supine position—lying horizontally on their backs—on a firm

crib mattress in order to reduce the chance of SIDS.[6]

23.     Likewise, the National Institutes of Health, the Centers for Disease Control and

Prevention, and the federal Maternal Child Health Bureau all recommend that infants be put to

bed on their backs on a firm, flat surface.[7]

24.     According to an investigative report by Consumer Reports Defendant "failed to

adequately test [the Rock 'N Play Sleeper] for safety before bringing it to market in 2009. . . .  It

never conducted a thorough medical analysis or commissioned independent third-party testing to

establish whether it was safe for infants to sleep at a 30-degree incline."[8]

25.     Instead, according to Consumer Reports, Defendant only consulted one medical

expert, Dr. Gary Deegear, a family practice physician who was later disciplined for practicing

medicine without a license and while under the influence of drugs or alcohol.  Dr. Deegear did

not perform a comprehensive evaluation of the Rock 'N Play Sleepers' safety, but, apparently,

---

[5] https://www.cpsc.gov/Recalls/2019/fisher-price-recalls-rock-n-play-sleepers-due-to-reports-of-deaths.
[6] https://www.aafp.org/afp/2005/1201/p2368.html.
[7] https://www.consumerreports.org/child-safety/inclined-sleeper-deaths-rise-to-50-as-industry-continues-to-sell-the-products/.
[8] *Id.*

simply relied on the fact that pediatricians recommend infants with reflux sleep at a 30-degree include in concluding the product was safe.[9]

26.     The first time Defendant hired a pediatrician to evaluate the Rock 'N Play Sleeper was in 2017, eight years after the product's introduction, as part of its defense in a product liability lawsuit.[10]

27.     In a deposition in a wrongful death case brought against Defendant, its parent company's director for product safety admitted that she was not aware, prior to the introduction of the Rock 'N Play Sleeper, of any literature indicating it was safe for an infant to sleep in an elevated position all night.  She also admitted that Defendant had not conducted any independent research to determine whether sleeping all night in an inclined position was safe.[11]

28.     In August 2012, pediatrician Natasha Burgert wrote an open letter to Defendant, published on her blog KC Kids Doc, relaying her concerns about the safety of the Rock 'N Play Sleeper.  Among other things, Dr. Burgert stated:  "As a pediatrician and parent consumer, I believe it irresponsible to promote the Rock n' Play Sleeper as an safe, overnight sleeping option for infants.  By continuing to do so, you are putting babies at risk.  The Rock n' Play Sleeper should not be used for extended, unobserved infant sleep for the following reasons.  First, design features of this product are known to increase the risk of sudden infant death syndrome (SIDS). . . .  The current American Academy of Pediatrics (AAP) guidelines for the prevention of SIDS includes placing baby on a firm sleep surface without extra padding, pillows, or loose items. The Rock and Play Sleeper does not adhere to these guidelines.  Specifically, the bottom is not firm.

_____

[9] *Id.*
[10] https://www.smh.com.au/world/north-america/how-fisher-price-invented-a-baby-sleeper-without-safety-tests-and-kept-selling-it-even-as-babies-died-20190531-p51t0z.html.
[11] *Id.*

And, some models include padded inserts that can move and shift during sleep.  In my opinion, this product is a portable infant seat with attached sides, and should be categorized and marketed as such.  I am concerned that infants in the 'sleeper' may be at risk of asphyxiation or suffocation if continued to be used as a place for overnight, unobserved infant sleep."[12]

29.     Despite these concerns, Defendant sold approximately 4.7 million Rock 'N Play Sleepers until, in August 2019, it finally warned consumers of the products' danger and recalled all models.

30.     Defendant has instituted a recall resolution program, pursuant to which very few purchasers and owners of Rock 'N Play Sleepers will be made whole.  For units purchased on or after October 12, 2018 (six months prior to the recall), Defendant is offering a full refund provided the purchaser retained the receipt.  If the purchaser failed to retain the receipt, Defendant "will determine the refund amount."[13]

31.     For units purchased prior to October 12, 2018, Defendant is offering "a voucher for a Fisher-Price product to be selected from a list of products to be provided by Fisher-Price. [The] product choice will be determined by the original date of purchase of the product."[14]

32.     These refunds will not fully compensate most purchasers or owners for their losses.

## CLASS ACTION ALLEGATIONS

33.     Pursuant to Fed. R. Civ P. 23, Plaintiff brings this action on behalf of herself and a nationwide class (the "Nationwide Class") defined as:

---

[12] https://www.kckidsdoc.com/kc-kids-doc/dear-fisher-price.
[13] https://service.mattel.com/us/recall/BJD57_ivr.asp.
[14] *Id.*

> **All persons who purchased or owned any model of Fisher-Price Rock 'N Play Sleeper from 2009 to the present.**

34.     Alternatively, Plaintiff seeks certification of an Iowa Class of purchasers and/or owners defined as:

> **All persons who purchased or owned any model of Fisher-Price Rock 'N Play Sleeper in Iowa from 2009 to the present.**

35.     Excluded from the proposed class are: (a) all persons who are entitled to and receive a full refund, including any sales taxes paid, under Defendant's recall resolution program; (b) Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and (c) Defendant's legal representatives, predecessors, successors and assigns.

36.     The requirements for maintaining this action as a class action are satisfied as follows.

37.     Fed. R. Civ. P. 23(a)(1): Numerosity.  The proposed class is so numerous and so geographically dispersed that the individual joinder of all absent class members is impracticable. While the exact number of absent class members is unknown to Plaintiff at this time, it is ascertainable by appropriate discovery and Plaintiff is informed and believes, based on fact that Defendant recalled an estimated 4.7 Rock 'N Play Sleepers, that the proposed class likely includes thousands of members, thus satisfying the requirements of Rule 23(a)(1).

38.     Fed. R. Civ. P. 23(a)(2): Common Questions of Law or Fact Predominate. Common questions of law or fact exist as to all class members and predominate over any questions which affect only individual class members.  These common questions of law or fact include, but are not limited to:

> a.   Whether Defendant's claims about the Rock 'N Play Sleepers being suitable for prolonged or overnight sleep are deceptive;

b. Whether Defendant engaged in unfair and/or deceptive advertising in marketing the Rock 'N Play Sleepers as being suitable for prolonged or overnight sleep;

c. Whether Defendant made knowing misrepresentations regarding the Rock 'N Play Sleepers;

d. Whether Defendant breached any express or implied warranty;

e. Whether Defendant has been unjustly enriched;

f. Whether Plaintiff and the Class members suffered injury or damage as a result of Defendant's conduct;

g. Whether Plaintiff and the Class members are entitled to damages and/or restitution; and

h. The measure of damages and/or restitution.

39. Fed. R. Civ. P. 23(a)(3) and (4): Typicality and Adequacy. Plaintiff's claims are typical of the class members' claims, and Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel with substantial experience in class actions and in complex litigation. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the class members, and have the financial resources to do so. Neither Plaintiff nor her counsel have any interests adverse to the class members' interests.

40. Fed. R. Civ. P. 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The Plaintiff's damages are relatively small compared to the burden and expense that would be required to individually litigate their claims, so it would be impracticable for the class members to seek redress on an individual basis. Individualized litigation would also pose the threat of significant administrative burden to the

court system.  Individual cases would create the potential for inconsistent or contradictory judgments, and would increase delay and expense to all parties and the court system.  By contrast the class action device presents far fewer management difficulties and provides the streamlined benefits of singular adjudication and comprehensive supervision by one court.  Given the similar nature of the class members' claims, the class will be easily managed by the Court and the parties and will be managed more efficiently in this integrated class action than through multiple separate actions in the various states.

## COUNT I

## VIOLATION OF NEW YORK GENERAL BUSINESS LAW, N.Y. GBL LAW § 349

41.     Plaintiff repeats and realleges, as if fully set forth herein at length, each and every allegation contained in the above paragraphs and further alleges:

42.     New York General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in New York.

43.     Section 349 provides that "any person who has been injured by reason of any violation of this section may bring . . . an action to recover his actual damages or fifty dollars, whichever is greater."

44.     Section 349 further provides that "[t]he court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section," and that "[t]he court may award reasonable attorney's fees to a prevailing plaintiff."

45.     Other states across the country have enacted substantially similar consumer protection statutes which require the same or similar showings of proof, and which prevent the unlawful conduct described herein.[15]

46.     Defendant's design, manufacture, marketing, and/or sale of the Rock 'N Play Sleepers constitutes "business, trade or commerce" under § 349.

47.     Defendant engaged in unfair and deceptive acts and practices in violation of § 349.  Among other things, Defendant willfully and knowingly misrepresented that the Rock 'N Play Sleepers were appropriate for overnight sleep and prolonged sleep, and willfully and knowingly omitted to state that the Rock 'N Play Sleepers posed a danger of suffocation, asphyxiation, and death even when used according to the instructions.

48.     Defendant's misrepresentations and omissions were material, reasonably likely to mislead a reasonable consumer, and directed at the public at large.

49.     Defendant's misrepresentations and omissions were made willfully and knowingly.  For example, Defendant knew that the Rock 'N Play Sleepers' design violated the American Academy of Pediatrics recommendations for infant sleep (supine position on a flat,

---

[15] *See* Alaska Stat. § 45.50.471, *et seq.*, Ark. Code § 4-88-101, *et seq.*, Colo. Rev. Stat. § 6-1-105, *et seq.*, Conn. Gen. Stat. § 42-110b, *et seq.*, 6 Del. Code § 2511, *et seq.*, D.C. Code § 28-3901, *et seq.*, Fla. Stat. § 501.201, *et seq.*, Ga. Code Ann. § 10-1-393, *et seq.* and Ga. Code Ann. § 10-1-370 *et seq.*, Haw. Rev. Stat. § 480, *et seq.*, Idaho Code § 48-601, *et seq.*, 815 ILCS § 505/1, *et seq.*, Kan. Stat. § 50-623, *et seq.*, Ky. Rev. Stat. § 367.110, *et seq.*, La. Rev. Stat. § 51:1401, *et seq.*, M.G.L. c. 93A, *et seq.*, Me. Rev. Stat. Ann. tit. 5, § 205-A, *et seq.*, Md. Com. Law Code § 13-101, *et seq.*, Mich. Stat. § 445.901, *et seq.*, Minn. Stat. § 8.31, *et seq.*, Missouri Stat. § 407.010, *et seq.*, Neb. Rev. Stat. §§ 59-1601, *et seq.*, Nev. Rev. Stat. § 598.0903, *et seq.*, N.H. Rev. Stat. § 358-A:1, *et seq.*, N.J. Rev. Stat. § 56:8-1, *et seq.*, N.M. Stat. § 57-12-1, *et seq.*, N.Y. Gen. Bus. Law § 349 *et seq.*, N.D. Cent. Code § 51-15-01, *et seq.*, Ohio Rev. Code Sec. 4165.01 *et seq.*, Okla. Stat. 15 § 751, *et seq.*, Or. Rev. Stat. § 646.605, *et seq.*, R.I. Gen. Laws. § 6-13.1-1, *et seq.*, S.C. Code Laws § 39-5-10, *et seq.*, S.D. Code Laws § 37-24-1, *et seq.*, Tex. Bus. & Com. Code § 17.45, *et seq.*, 9 Vt. § 2451, *et seq.*, Va. Code § 59.1-196, *et seq.*, Wash. Rev. Code. § 19.86.010, *et seq.*, W. Va. Code § 46A-6-101, *et seq.*, Wis. Stat. Ann. § 100.18, *et seq.*

firm mattress).  Defendant therefore knew that the Rock 'N Play Sleepers did not provide a "safe and comfortable place [for baby] to sleep."[16]

50.     Plaintiff and the Class members have been injured and/or damaged because they purchased and/or owned the Rock 'N Play Sleepers in reliance on Defendant's representations regarding the products' safety.  Safety is a paramount concern to parents and others caring for babies, and Plaintiff and the Class members would not have purchased the Rock 'N Play Sleepers if they knew the products posed a risk of death.

51.     As a result of Defendant's conduct, in violation of § 349, Plaintiff and the Class members have been injured in amounts to be proven at trial.

52.     Plaintiff and the Class members are each entitled to the greater of their actual damages or fifty dollars, plus treble damages based on Defendant's willful and knowing violation of § 349, plus reasonable attorney fees.

## COUNT II

## BREACH OF IMPLIED WARRANTY, N.Y. U.C.C. § 1-101 *et seq*.

53.     Plaintiff repeats and realleges, as if fully set forth herein at length, each and every allegation contained in the above paragraphs and further alleges:

54.     New York's Commercial Code, N.Y. U.C.C. § 1-101 *et seq*. governs, among other things, the implied warranty of merchantability.

55.     The Rock 'N Play Sleeper is a "good" under N.Y. U.C.C. § 2-105(1).

---

[16] https://web.archive.org/web/20170815185442/https://fisher-price.mattel.com/shop/en-us/fp/baby-sleepers.

56.     N.Y. U.C.C. § 2-314(1) states, "[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."

57.     Pursuant to N.Y. U.C.C. § 2-314(2), "Goods to be merchantable must be at least such as (a) pass without objection in the trade under the contract description; and . . . (c) are fit for the ordinary purposes for which such goods are used; and . . . (f) conform to the promises or affirmations of fact made on the container or label if any.

58.     Defendant impliedly warranted that its Rock 'N Play Sleepers were in merchantable condition and of a merchantable quality.

59.     Defendant breached this implied warranty, because to be merchantable, a sleeper must be suitable for prolonged sleep and overnight sleep, which the Rock 'N Play Sleepers were not.

60.     Defendant knew its Rock 'N Play Sleepers were not suitable for prolonged sleep and overnight sleep, yet continued selling the products without disclosing this fact in violation of the above implied warranties.  It would thus be futile for Plaintiff to provide Defendant and opportunity to cure the breach.

61.     Plaintiff and the Class members suffered injury and/or damage as a result of Defendant's breach of warranty.

## COUNT III

## VIOLATION OF THE PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUDS ACT, IOWA CODE CHAPTER 714H

62.     Plaintiff repeats and realleges, as if fully set forth herein at length, each and every allegation contained in the above paragraphs and further alleges:

63.     Defendant has engaged in unfair, deceptive, untrue and misleading business practices in violation of Iowa law.

64.     Defendant has violated this statutory prohibition against engaging in unlawful acts and practices by, inter alia, making the representations and omissions of material facts "with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false, promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise."  Iowa Code § 714H.3.

65.     Pursuant to Iowa law, Defendant had a statutory duty to refrain from unfair or deceptive acts or practices in the manufacture, promotion, and sale of the Rock 'N Play Sleepers to Plaintiff and the Class members.

66.     While engaged in trade or commerce, Defendant engaged in unfair and deceptive acts and practices, as alleged in this Complaint, including, without limitation:

   a.   Unfairly and deceptively misrepresenting the safety of its Rock 'N Play Sleepers;

   b.   Unfairly and deceptively misrepresenting that its Rock 'N Play Sleepers were appropriate for prolonged and overnight sleep;

   c.   Unfairly and deceptively omitting to warn consumers about the risk of injury and/or death associated with its Rock 'N Play Sleepers; and

   d.   Unfairly and deceptively omitting to notify consumers that the American Academy of Pediatrics and other public health groups recommended against inclined sleep.

67.     Plaintiff and the Class members would not have purchased the Rock 'N Play Sleepers if they knew they were unsuitable for prolonged sleep and that they could cause serious injury and/or death even when used as instructed.

16

68.     As a result of Defendant's unfair and deceptive conduct, Plaintiff sustained damages including but not limited to the damages detailed above, incorporated herein.

69.     Defendant intended that Plaintiff and the Class members rely on its materially deceptive advertisements and misrepresentations and purchase the Rock 'N Play Sleepers as a consequence of the deceptive practices.

70.     Defendant's deceptive representations and material omissions to Plaintiff and the Class members constitute unfair and deceptive acts and practices under Iowa Law.

71.     Defendant engaged in wrongful conduct while at the same time obtaining, under false pretenses, significant sums of money from Plaintiff and the Class members.

72.     Plaintiff and the Class members were actually deceived by Defendant's misrepresentations.

73.     As a proximate result of Defendant's misrepresentations, Plaintiff and the Class members have suffered ascertainable losses, in an amount to be determined at trial.

74.     Plaintiff obtained the attorney general's approval prior to filing this action pursuant to Iowa Code § 714H.7.

## COUNT IV

### BREACH OF IMPLIED WARRANTY, IOWA CODE CHAPTER 554

75.     Plaintiff repeats and realleges, as if fully set forth herein at length, each and every allegation contained in the above paragraphs and further alleges:

76.     Iowa's Commercial Code, Iowa Code § 554.1101 *et seq*. governs, among other things, the implied warranty of merchantability.

77.     The Rock 'N Play Sleeper is a "good" under Iowa Code § 554.2105

78.     Iowa Code § 554.2314 states, "[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."

79.     Pursuant to Iowa Code § 554.2314(2), "Goods to be merchantable must be at least such as (a) pass without objection in the trade under the contract description; and . . . (c) are fit for the ordinary purposes for which such goods are used; and . . . (f) conform to the promises or affirmations of fact made on the container or label if any.

80.     Defendant impliedly warranted that its Rock 'N Play Sleepers were in merchantable condition and of a merchantable quality.

81.     Defendant breached this implied warranty, because to be merchantable, a sleeper must be suitable for prolonged sleep and overnight sleep, which the Rock 'N Play Sleepers were not.

82.     Defendant knew its Rock 'N Play Sleepers were not suitable for prolonged sleep and overnight sleep, yet continued selling the products without disclosing this fact in violation of the above implied warranties.  It would thus be futile for Plaintiff to provide Defendant and opportunity to cure the breach.

83.     Plaintiff and the Class members suffered injury and/or damage as a result of Defendant's breach of warranty.

## COUNT V

## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, *ET SEQ.*

84.     Plaintiff repeats and realleges, as if fully set forth herein at length, each and every allegation contained in the above paragraphs and further alleges:

85.     The Rock 'N Play Sleepers are "consumer products" as defined in the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

86.     Plaintiff and Class members are "consumers" as defined by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

87.     Defendant is a "supplier" and "warrantor" as defined by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

88.     Therefore, the Rock 'N Play Sleepers' implied warranties are covered by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

89.     Defendant breached its implied warranties, as described above, by failing to provide its Rock 'N Play Sleepers in a merchantable condition.  Defendant knew its Rock 'N Play Sleepers were not suitable for prolonged or overnight sleep, but knowingly marketed and sold the products to consumers to be used for that purpose.

90.     Plaintiff and the Class members are intended third-party beneficiaries of contracts, including all express and implied warranties, between Defendant and those who sell its products (who were not intended to be the ultimate consumer/user).  Thus, privity is not required between Plaintiff and the Class members, on the one hand, and Defendant, on the other.

91.     It would be unnecessary and futile to require an informal dispute settlement procedure, or to afford Defendant a reasonable opportunity to cure its breach, as Defendant has knowingly persisted in breaching its warranties for many years without rectifying the situation and/or disclosing the truth.  Any requirement that Plaintiff resort to information dispute resolution or afford Defendant a reasonable opportunity to cure is excused.

92.     Plaintiff and the Class members have been damaged as a result of Defendant's breach of warranty as described herein.

93.   The amount in controversy exceeds the statutory minimums set forth at 15 U.S.C. § 2310(d)(3).  Each Class member's individual claim is equal to or larger than $25 and the cumulative amount in controversy (excluding interest and costs) exceeds $50,000.

## COUNT VI

## FRAUD

94.   Plaintiff repeats and realleges, as if fully set forth herein at length, each and every allegation contained in the above paragraphs and further alleges:

95.   Defendant failed to disclose the risks associated with the ordinary and intended use of the Rock 'N Play Sleepers.  Defendant also represented that the Rock 'N Play Sleepers were safe for prolonged and overnight sleep, which they were not.

96.   Defendant made these false and misleading representation and omissions with knowledge of their falsity.  Defendant knew that the Rock 'N Play Sleepers did not comply with the American Academy of Pediatrics and other public health groups' infant sleep guidelines, and knew of reports regarding the products' dangerous nature.  Nonetheless, Defendant continued selling the Rock 'N Play sleepers to consumers.

97.   Defendant made these false and misleading representations and omissions with the intent to induce Plaintiff and the Class members to purchase the Rock 'N Play Sleepers. Plaintiff and the Class members were so induced, and reasonably justifiably relied on Defendant's representations when purchasing the products.

98.   Plaintiff and the Class members have been injured and/or damaged as a result of Defendant's wrongful conduct.

20

## COUNT VII

## UNJUST ENRICHMENT

99.     Plaintiff repeats and realleges, as if fully set forth herein at length, each and every allegation contained in the above paragraphs and further alleges:

100.    Defendant has been enriched at Plaintiff and the Class members' expense as a result of its deceptive marketing and sale of the Rock 'N Play Sleepers.

101.    Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiff and the Class members as a result of its wrongful conduct.  Thus, it would be inequitable for Defendant to retain the benefit without restitution to Plaintiff and the Class members.

## JURY DEMAND

Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests relief against Defendant as set forth below:

1.      Certifying the proposed nationwide Class or, alternatively, certifying the proposed Iowa Class;

2.      Appointing Plaintiff as Class representative and her undersigned counsel as Class counsel;

3.      Awarding Plaintiff and the Class members damages, including treble damages as provided by law;

4.      Awarding restitution and disgorgement of Defendant's unjustly-earned revenues to Plaintiff and the Class members;

5.      Awarding attorney fees and costs; and

6.      Granting such additional relief as the Court deems just and proper.


July 9, 2019                                      Respectfully submitted,

                                                  */s/ J. Barton Goplerud*_____
                                                  J. Barton Goplerud
                                                  Brian O. Marty
                                                  SHINDLER ANDERSON GOPLERUD &
                                                  WEESE PC
                                                  5015 Grand Ridge Dr
                                                  West Des Moines, IA 50265
                                                  Telephone:     (515) 223-4567
                                                  Facsimile:     (515) 223-8887
                                                  Email:         goplerud@sagwlaw.com
                                                                 marty@sagwlaw.com

                                                  Robert K. Shelquist (pro hac vice to be filed)
                                                  LOCKRIDGE GRINDAL NAUEN P.L.L.P.
                                                  100 South Washington Ave., Suite 2200
                                                  Minneapolis, MN 55401
                                                  Telephone:     (612) 339-6900
                                                  Facsimile:     (612) 339-0981
                                                  Email:         rkshelquist@locklaw.com

                                                  Charles J. LaDuca (pro hac vice to be filed)
                                                  CUNEO GILBERT & LADUCA, LLP
                                                  4725 Wisconsin Ave, NW
                                                  Washington, DC 20016
                                                  Telephone:     (202) 789-3960
                                                  Email:         CharlesL@cuneolaw.com

                                                  *Attorneys for Plaintiff*